# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

**ROMELLE MATTHEWS, TIMOTHY R. CAMPBELL,**
**JESSE ANDERSON and JEREMY DUBOIS**                              **PLAINTIFFS**


**v.**                                                    **CAUSE NO.:1:10cv286-SA-DAS**


**CITY OF WEST POINT, MISSISSIPPI**                                        **DEFENDANT**


## MEMORANDUM OPINION

Presently before the Court are four Motions for Summary Judgment [50, 52, 55, 59] filed by Defendant City of West Point. Each motion for summary judgment corresponds with the claims asserted by the four separate Plaintiffs involved in this action. After reviewing the motions, responses, rules, and authorities, the Court finds as follows:

## FACTUAL BACKGROUND

The Plaintiffs, Romelle Matthews (African American), Timothy Campbell (Caucasian), Jesse Anderson (African American), and Jeremy Dubois (Caucasian), are former and current police officers with the City of West Point. While there are four separate Plaintiffs, with each individual Plaintiff asserting his own independent claims of discrimination or retaliation, each of the actions brought stem from a series of events occurring after a new Board of Selectmen for the City of West Point was seated and a new Acting Chief of Police was appointed. Thus, some general background information is necessary.

In 2005, the City of West Point's Board of Selectmen had a racial composition of four Caucasian selectmen and one African American selectman. In 2007, the racial makeup of the Board changed to three Caucasian and two African-American selectmen. In July 2009, West Point held a city-wide election. As a result of this election, the racial composition of the selectmen changed to four African-American selectmen and one Caucasian selectman. Shortly thereafter, the newly-elected selectmen met and voted four to one to discharge then-Chief of Police, Steve Bingham, who is Caucasian. The four selectmen who voted to discharge Bingham—Jasper Pittman, Rod Bobo, Charles Collins, and Homer Cannon—are African American. The Board elected Bobby Lane, an African American, to serve as the acting chief following Bingham's termination.

After the Board elected Lane, a myriad of decisions were made that affected the City of West Point's police department. More specifically, these decisions impacted the jobs of the four Plaintiffs and fueled the filing of this lawsuit. It is alleged that the Board, as well as Chief Lane, considered race as a factor when making employment decisions, and that the Board sought to adopt a "race-based" arrest policy. The two Caucasian Plaintiffs, Dubois and Campbell, bring claims of intentional race discrimination under Title VII, Section 1981, and the Fourteenth Amendment's Equal Protection Clause. The two African-American Plaintiffs, Anderson and Matthews, allege that they were retaliated against in violation of Title VII, Section 1981, and the Fourteenth Amendment's Equal Protection Clause.[1] Due to the differences in the specific claims alleged, the Court now provides factual background distinctive to each Plaintiff.

---

[1] The Court notes that, due to confusion found in Plaintiffs' complaint and the summary-judgment record, the Court entered an order [82], seeking clarification of the claims brought by Plaintiffs Matthews and Anderson. In the response [83] to this order,

***Plaintiff Jeremy Dubois***

Plaintiff Jeremy Dubois ("Dubois" or "Plaintiff Dubois"), Caucasian, began his employment with the West Point Police Department in February 2003, as a patrolman. A few years later, Dubois was promoted to the rank of corporal. In March 2007, Dubois contends that he was "promoted" to the newly-created narcotics division, along with Jesse Anderson and Shane Lampkin. A year later, Dubois was again promoted, this time to the rank of sergeant. Dubois asserts that, after Lampkin left the police force due to health reasons, Anderson "took over supervision of narcotics." Shortly thereafter, Bobby Lane (African American), the newly appointed Acting Chief of Police for the City of West Point, held a staff meeting wherein it was announced that several changes would be made in the Police Department. According to all of the Plaintiffs, at the meeting, "Bobby Lane told everyone that he was under the directive of the Board [of Selectmen] and doing what the Board wanted him to do, and he would be moving people around because that is what the Board wanted done."

It appears that Bobby Lane held a second meeting in November 2009. At this meeting, Lane informed Jesse Anderson that he was allegedly being "demoted" to patrol. Lane also announced that Carl Lampton (African American) would replace Anderson. According to Dubois, this reassignment meant that Lampton was in a supervisory position over Dubois in the narcotics division. Dubois asserts that Lane informed him that he would

---

Plaintiffs Matthews and Anderson made clear that they were *only* bringing claims of retaliation, and that they were not maintaining claims of intentional discrimination. Due to this, the Court entered another order [84], allowing the parties—in particular, the Defendant—an opportunity to submit additional briefing. The parties declined to do so.

have to train Lampton. Dubois maintains that he was denied a promotion when Lampton was placed in an alleged supervisory position over him. Dubois asserts that "[t]he only reason that Lampton was promoted to supervisor over Lampton is because of his race, [African American]." Dubois brings his race discrimination claim pursuant to Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment. Defendant has filed motion for summary judgment [52], arguing it is entitled to judgment as a matter of law on all of Plaintiff Dubois' claims.

### Plaintiff Tim Campbell

Plaintiff Tim Campbell ("Campbell" or "Plaintiff Campbell"), Caucasian, began his employment with the West Point Police Department in 1985, as a paid internist while he was attending Northeast Mississippi Community College. He began working full time as a patrol office in 1987. In either 2003 or 2004, Campbell was promoted to sergeant and, in 2007, he was promoted to, and still remains in, a lieutenant position. In this capacity, Plaintiff Campbell appears to be a lieutenant over patrol, wherein he supervises five patrol officers on a shift.

Campbell's complaints of discrimination stem from decisions announced after Bobby Lane (African American) was appointed the new Acting Chief of Police for the City of West Point. At a November 2009 meeting, Lane advised that multiple changes would be taking place within the police department. In particular, Lane revealed that Avery Cook (African American) would serve as Lane's Acting Assistant Chief of Police. Campbell maintains that he was "passed over" for the position of assistant chief because of his race

(Caucasian).[2] Campbell contends that he filed a grievance with the City Administrator, but his grievance was never addressed or remedied. Thus, Campbell filed a charge of discrimination with the EEOC and, after receiving his right to sue letter, he filed the instant action alleging race discrimination in violation of Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment. Defendant has filed motion for summary judgment [50], arguing it is entitled to judgment as a matter of law on all of Plaintiff Campbell's claims.

### *Plaintiff Romelle Matthews*

Plaintiff Romelle Matthews ("Matthews" or "Plaintiff Matthews"), African American, began his employment with the West Point Police Department in October 2007, as a sergeant of detectives. Around a year later, Matthews was promoted to the position of deputy chief. According to Matthews, this promotion meant that he was the captain over investigations. In 2009, however, Matthews work situation quickly changed. In November 2009, Matthews was allegedly demoted and, shortly thereafter, he was suspended and eventually terminated. Matthews brings claims of retaliation pursuant to Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment. His complaints of retaliation are twofold. Matthews first claims that he was demoted due to his

---

[2] In the factual section of Plaintiff Campbell's brief, he contends that he was "demoted" when he was told by Lane to report to "B patrol." However, this alleged demotion is not mentioned anywhere else in Plaintiff's brief. In fact, in his argument section, Plaintiff only alleges, and thus only analyzes, his claim that he was passed over for the position of assistant chief. This is also the only claim discussed in Defendant's summary judgment motion. Thus, the Court limits its analysis to the claim that Plaintiff Campbell was passed over for the assistant chief position.

opposition to an alleged race-based arrest policy.[3]  Second, Matthews alleges that he was suspended and subsequently terminated in retaliation for his preparing and filing an EEOC charge. Defendant has filed motion for summary judgment [59], arguing it is entitled to judgment as a matter of law on all of Plaintiff Matthews' claims.

A.  <u>Demotion</u>

During his tenure working under former Police Chief Steve Bingham, Matthews contends that he never encountered any problems or complaints concerning his job performance.  Yet, Matthews alleges that, in the spring of 2009, Selectman Jasper Pittman (African American) confronted him and accused him of racially profiling African Americans. Matthews also contends that, around the same time, Bingham told him that he was getting a lot of "pressure" about the need to arrest more Caucasians.[4]  Matthews avers that he told Bingham that "it doesn't operate like that."  Along the same lines, Matthews alleges that Jesse Anderson told him that Jasper Pittman confronted him about the need to arrest more Caucasians. In Anderson's deposition testimony, he testified that he received a phone call from Pittman in February 2009, and that Pittman told him that the police department was arresting "too many" African Americans.  Anderson testified, "They want us to balance it out – arresting blacks and whites."  Jasper Pittman acknowledged in his deposition testimony that he had a conversation with Anderson in February 2009:

---

[3] Matthews also alleges that he opposed being called "Bingham's Boy," a term that is alleged to be racially offensive and carry racial connotations.

[4] In his deposition testimony, Matthews notes that, on that occasion, Bingham never specifically stated who he was receiving pressure from.  Matthews noted, however, that on other occasions Bingham stated that "the Board gives him a lot of pressure. The board is pressuring him."

Q:    Do you recall having a conversation with Jesse Anderson, telling him there were too many blacks being arrested and not enough whites – sometime around February 2009?

A:    February 2009? We had a conversation, but I don't think that was the – that was the sole topic of it.

Q:    Well, tell – tell me – well, first of all, did you discuss that issue?

A:    I think we discussed something similar to that.

Further, Matthews testified that Anderson came to him to complain about this conversation with Pittman. Matthews asserts that he told Anderson, "don't worry about it, I'[ll] take care of it."

As noted *supra*, Bingham's employment was terminated less than two months after the racial composition of the Board of Selectmen became majority African American. The Board selected Bobby Lane (African American) to be the new Acting Chief of Police and, at a November 2009 meeting, Lane advised that multiple changes would be taking place within the police department. In particular, Lane allegedly informed Matthews that he was no longer captain, but instead was just an "acting captain." Lane also allegedly advised Matthews that he would be returning to patrol, he would no longer have a car, and his responsibilities would allegedly be taken away. Matthews contends Lane also told him that as long as Matthews' pay was not affected, this could not be considered a demotion. Matthews asserts that this alleged demotion "put [him] back as a status" and that Lane "had – one of the patrolman [Sean Keller] actually running [his] shift."

Matthews further alleges that he and Jesse Anderson were repeatedly called "Bingham's Boy" after the Board's racial composition changed to majority African

American and Lane was selected as acting chief. According to Matthews, Anderson, and Zate McGee,[5] "Bingham's boy" was a racially-derogatory term. Specifically, the term has been likened to being called a "house n----r" or an "Uncle Tom." Matthews contends that he nevertheless still worked in patrol because Randy Jones, the Chief Administrative Officer ("CAO"), instructed him "to just go along with the program until they fixed it." Matthews contends that he was demoted in retaliation for his opposition to implementing a race-based arrest policy as well as his opposition to being called a racially-derogatory name.

B. Suspension and Termination

Matthews appears to have worked for "a couple of weeks in patrol" before he was suspended and eventually terminated. Matthews maintains that, after Bingham was terminated, Lane started writing him up "for frivolous reasons to create a paper trail." Matthews responded to Lane's write-ups, and he filed a grievance with CAO Randy Jones. According to Matthews, after he received the first write-up, he prepared to file a charge with the EEOC and, subsequently, Bobby Lane found the back page of a letter Matthews wrote to the EEOC. Lane allegedly questioned Matthews about the letter. Specifically, Matthews testified that the following exchange occurred:

> Q: All right. How long ultimately after that did you remain in patrol?
>
> A: Up until he found a back page of the letter that I wrote to the EEOC. And that's when he called me to the office and said – asked me did I write the letter. And I said, Yes.
>
> He said, Do you know what this is? I said, Yes. Are you familiar with it? I said, Yes. He said, Did you write it? I said, Yes. He said, Did you write it? Yes. He said, **Well, in that case, then, I'm seeking – I'm**

_____
[5] Zate McGee is also a police officer for the City of West Point.

8

**suspending you without pay, and I'm seeking termination from the board.**

Matthews was then suspended indefinitely without pay pending a request for termination. Shortly thereafter, Plaintiff Matthews' counsel advised the Mayor, City Attorney, and Chief Administrative Officer that the proposed termination of Matthews would result in litigation. At a subsequent meeting of the Mayor and the Board of Selectmen, held on December 28, 2009, the Board voted 3-2 to terminate Plaintiff Matthews. Matthews alleges that he was suspended and terminated in retaliation for filing a charge with the EEOC.

### Plaintiff Jesse Anderson

Jesse Anderson ("Anderson" or "Plaintiff Anderson") began working for the West Point Police Department in either 2000 or 2001.[6] Anderson was employed as a patrolman until 2007. According to Anderson, he was "promoted" to narcotics in 2007, by Steve Bingham. At this time, neither Anderson's pay nor rank was altered. In 2008, Anderson was "promoted" from corporal to the rank of sergeant. However, in 2009, Anderson's work situation quickly changed. Anderson contends that in February 2009, Selectman Jasper Pittman approached him about the racial composition of the individuals being arrested in the City of West Point. Pittman allegedly told Anderson that "we arrested too many blacks." Anderson declares that he advised Pittman that the police department was not receiving any actionable information on Caucasians selling narcotics that they could arrest. Anderson allegedly then confronted Pittman about Pittman referring to him as "Bingham's Boy."

---

[6] In Defendant's summary judgment motion, it contends that Plaintiff Anderson's employment commenced in 2001. In Plaintiff's brief in opposition, however, he submits that he was hired in 2000. The Court finds that this dispute is not material to the summary-judgment decision.

According to Matthews, Anderson, and Zate McGee, "Bingham's boy" was a racially derogatory term. Specifically, the term has been likened to being called a "house n----r" or an "Uncle Tom."

As noted above, following an election in July 2009, a new Board was seated. The new Board terminated Bingham as the police chief and appointed Lane (African American) to take his position. Apparently at a meeting in October 2009, Lane informed everyone that he was making changes to the police department or else the Board "would have his head." Lane allegedly also informed the Plaintiffs that if they had any grievances, the grievances would be denied. Shortly thereafter, in November 2009, Lane announced several changes that would be taking place within the structure of the police department. In particular, Lane advised that Anderson would be moving back to patrol. Anderson contends that he was "demoted" in retaliation for his opposition to implementing a race-based arrest policy, as well as his opposition to being called a racially-derogatory name. Anderson brings claims of retaliation pursuant to Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment.[7] Defendant has filed a motion for summary judgment [55], arguing it is entitled to judgment as a matter of law on all of Plaintiff Anderson's claims.

## LEGAL STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the

---

[7] As noted above, due to confusion between Plaintiffs' complaint and the summary judgment record, the Court entered an order [82], seeking clarification of the claims brought by Plaintiffs Matthews and Anderson. In the response [83] to this order, Plaintiffs Matthews and Anderson made clear that they were *only* bringing claims of retaliation, and that they were not maintaining claims of intentional discrimination.

moving party is entitled to judgment as a matter of law.[8] The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v.

---

[8] The Court feels compelled to point out to the parties that effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a), not 56(c). Rule 56(a) now states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## ANALYSIS AND DISCUSSION

### Plaintiff Jeremy Dubois

   A. Racial Discrimination Under Title VII

Plaintiff Dubois asserts that he was "passed over" for a supervisory position in the narcotics division due to his race. Defendant, in response, contends that Plaintiff (i) failed to exhaust his administrative remedies, and (ii) cannot demonstrate that he was denied a promotion. The Court considers each of Defendant's arguments in turn.

*Failure to Exhaust Administrative Remedies*

Before addressing the merits of this argument, the Court turns to a point of concern raised in Defendant's brief. Defendant maintains that "[c]ourts do not have **jurisdiction** to consider claims brought under Title VII when the aggrieved party has not first exhausted his administrative remedies by filing a discrimination charge with the EEOC." In Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982), the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." While there still appears to be "some dispute" within the Fifth Circuit as to "whether exhaustion [of administrative remedies] implicates subject matter jurisdiction, or whether it is a prerequisite subject to equitable doctrines," see Miller v. Potter, 359 F. App'x 535, 537 n.1 (5th Cir. 2010), the Court finds Zipes' holding to be both clear and controlling. See Reed Elservier, Inc. v.

Muchnick, --- U.S. ---, ---, 130 S. Ct. 1237, 1247 n.5, 176 L. Ed. 2d 18 (2010) (noting that the Court in Zipes "h[eld] that the [EEOC] filing requirement was not a jurisdictional prerequisite to suit"); Union Pacific R. Co. v. Brotherhood of Locomotive Engineers, --- U.S. ---, ---, 130 S. Ct. 584, 589, 175 L. Ed. 2d 428 (2009) ("For example, this Court has held nonjurisdictional and forfeitable the provision in Title VII of the Civil Rights Act of 1964 requiring complainants to file a timely discrimination charge with the [EEOC] before proceeding to court."); Taylor v. United Parcel Serv., Inc., 554 F.3d 510, 521 (5th Cir. 2008) (citing Zipes and holding that the filing of a charge of discrimination with the EEOC is not jurisdictional); Young v. City of Houston, Tex., 906 F.2d 177, 180 (5th Cir. 1990) ("A failure of the EEOC prerequisite does not rob a court of jurisdiction.").

Employment discrimination plaintiffs must exhaust their administrative remedies before pursuing claims in federal court. Taylor v. Books a Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002). Exhaustion under Title VII requires filing a timely charge of discrimination with the EEOC and receipt of a "right-to-sue" letter. 42 U.S.C. § 2000e-5 (e) and (f); see also Taylor, 296 F.3d at 379. Exhaustion "serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving the employer some warning as to the conduct about which the employee is aggrieved." Hayes v. MBNA Tech., Inc., 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974), and Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)).

The scope of a lawsuit is limited to the allegations made in the EEOC charge and any claims that could reasonably be expected to grow out of it. See Fine v. GAF Chemical

Corp., 995 F.2d 576, 578 (5th Cir. 1993). Courts are to "construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." Price v. Sw. Bell Tel. Co., 687 F.2d 74, 78 (5th Cir. 1982); see also Preston v. Tex. Dep't of Family and Protective Servs., 222 F. App'x 353, 356 (5th Cir. 2007). To determine whether an allegation in a complaint falls within the scope of a charge filed with the EEOC, a court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006). The Fifth Circuit has stated that courts "must ever be mindful that the provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees. This protection must be extended to even the most unlettered and unsophisticated." Sanchez, 431 F.2d at 463 (citation omitted); see also Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 400-03, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008) (discussing the "permissive standard" of what constitutes a charge under the ADEA and noting that "[t]he system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency process"); Edelman v. Lynchburg College, 535 U.S. 106, 112-113, 122 S. Ct. 1145, 152 L. Ed. 2d 188 (2002); Fine, 995 F.2d at 578 (holding that a plaintiff may assert a Title VII cause of action based on a type of discrimination not explicitly listed on the charge if that discrimination is "like or related to the charge's allegations . . . .").

Here, Defendant asserts that Plaintiff Dubois did not file a denial of promotion charge with the EEOC prior to commencing this action. Plaintiff Dubois' charge states, in pertinent part, as follows:

> Because of racist attitudes among black members of the board of aldermen, there has been a desire to disrupt the narcotics unit. The majority of the city board of alderman wish to eliminate the narcotics unit or cause it to be ineffective. This is because of their racist attitudes and because they do not like the fact that numerous black persons are being arrested on narcotics charges. Accordingly, and in order to carry out the desire to frustrate the operation of the narcotics unit, in order to discriminate against white persons and in order to punish those persons who oppose race discrimination, on or about November 16, 2009, Sergeant Jesse Anderson was moved out of the narcotics unit **and a black person, with no experience in narcotics, was made my superior.**

The Court finds that the substance of the allegations contained within the factual statement could reasonably result in an investigation for a denial of a promotion claim. Accordingly, Defendant's Motion for Summary Judgment for failure to exhaust administrative remedies under Title VII is denied.

### *Title VII Denial of Promotion Claim*

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff does not seek to prove his case with direct evidence, instead presenting alleged circumstantial evidence and analyzing his claim under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In order to establish prima facie case that Defendant failed to promote Plaintiff Dubois because of his race, Plaintiff must

demonstrate: "(1) [he] belongs to a protected class; (2) [he] sought and was qualified for the promotion; (3) [he] was denied the promotion; and (4) the position [he] sought was filled by someone outside the protected class." Johnson v. Louisiana ex rel Louisiana Bd. of Sup'rs, 79 F. App'x 684, 686 (5th Cir. 2003) (citing Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

Once a plaintiff has made a prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production-not persuasion. Id.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"

Laxton, 333 F.3d at 578 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. 2097). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances." Id. Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578.

In contrast, the Fifth Circuit has modified the McDonnell Douglas formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. See generally Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004). At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001). However, the Supreme Court in Desert Palace, Inc. v. Costa held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. Id. at 101, 123 S. Ct. 2148; Smith v. Xerox Corp., 602 F.3d 320, 327-28 (5th Cir. 2010).

Defendant begins by arguing that Dubois has not demonstrated an adverse employment action. According to Defendant, while Plaintiff claims he was denied a promotion, "there was no promotion to be had. Rather, what occurred was that Plaintiff's co-worker was reassigned to a different unit and another person was brought in." Defendant maintains that Carl Lampton and Jesse Anderson essentially switched jobs. Lampton was moved from patrol to narcotics, while Anderson was moved from narcotics to patrol. Hence, according to Defendant, no promotion was available. As to this, the Court first notes that merely because the alleged job was not advertised (i.e., merely because the Defendant moved another individual into the job without announcement) does not automatically lead to the conclusion that Plaintiff Dubois was not passed over for an alleged promotion.[9] Instead, the more specific question presented here is whether the position Lampton moved into—the position in which Dubois asserts he should have been offered—was indeed a supervisory position. That is, whether the position would have been an actual "promotion" for Dubois.

At the outset, the Court notes that the Fifth Circuit has held that "a failure to promote is an adverse employment action." <u>Gordon v. Peters</u>, 2008 WL 162866, at *2 (5th Cir. Jan. 16, 2008). It is undisputed that Lampton, Anderson, and Plaintiff Dubois are all sergeants with the police department. Even when Lampton was moved to the narcotics division, he

---

[9] "Where the plaintiff claims discrimination in promotion on the basis that jobs for which she was qualified were never posted or otherwise opened for formal applications, she must establish that the company had some reason or duty to consider h[im] for the post." <u>Jones v. Flagship International</u>, 793 F.2d 714, 724 (5th Cir. 1986) (citing <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1133 (11th Cir.1984)). The Defendant did not raise this issue; however, the Court notes that there are factual disputes in the record concerning whether Defendant had a reason or duty to consider Plaintiff Dubois for the position.

remained a sergeant and his pay remained the same. In support of its contention that no promotion was offered or given, Defendant points to the deposition testimony of Bobby Lane, wherein Lane testified that Lampton was not "over" Dubois. However, Lampton's deposition testimony stands in stark contrast to this assertion:

> Q: When you were moved to narcotics, were you put over Jeremy Dubois?
>
> A: Yes, sir.
>
> Q: Who told you that?
>
> A: Bobby Lane.
>
> Q: What did he tell you specifically?
>
> A: You're going to be running my narcotics division.
>
> Q: And so, Jeremy was working for you?
>
> A: You could say that, but –
>
> Q: Is that what Bobby Lane said?
>
> A: Yeah. That's what he said. Yeah.

In a written letter to Chief Administrator Randy Jones, Dubois also noted as follows:

> As of Thursday November 12th 2009 I, Sgt. Jeremy Dubois was informed by Interim Chief Bobby Lane, during a meeting held at 4:00pm that Sgt. Jesse Anderson was being moved out of narcotics investigation, and back to patrol. Chief Lane advised that Sgt. Carl Lampton was going to be placed over narcotics, and that I was going to have to teach him about working narcotics investigations.

Dubois further testified in his deposition that Jesse Anderson was in a supervisory position over him prior to Anderson being moved to patrol. Along the same lines, Dubois additionally testified that even though he and Lampton were technically the same "rank,"

Lampton was in a supervisory position over him. Furthermore, Romelle Matthews advised, via a written letter to Chief Administrator Randy Jones, that Bobby Lane stated,

> There will be some changes and you don't have the right to file a grievance. I can demote you as long as I don't take your pay, and if you file a grievance I will deny it, because it will be frivolous.

After reviewing the record, the Court concludes that it cannot decide at this stage in litigation whether there was a promotion to be had in the narcotics division. Accordingly, there is a factual dispute as to whether Plaintiff Dubois can demonstrate of prima facie case of race discrimination under Title VII.[10]

After finding that factual disputes exist as to whether Plaintiff Dubois can demonstrate a prima facie case of racial discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. Here,

---

[10] It is noteworthy that in his deposition testimony, Plaintiff Dubois appears to concede that he has, as of now, been moved into the supervisory position over Carl Lampton:

| | |
|---|---|
| Q: | Okay. So who's the – who's the person at that point? Would it be Carl Lampton? That someone is going to Carl Lampton through the chain of command to come see you, or are they coming to you? |
| A: | It went from – it went from Interim Chief Lane to Captain Burgess to Carl to me. |
| Q: | Okay. Is it still going that route? |
| A: | No. |
| Q: | What's the route now? |
| A: | From Interim Chief Lane to Captain Burgess to me to Carl. |
| Q: | Okay. When did that change? |
| A: | This past May. |
| Q: | Okay. You said this past May? |
| A: | Or April. April. |
| Q: | April 2011? |
| A: | Right. |

While Defendant failed to raise this issue, the Court notes that this could presumably impact Plaintiff Dubois' claim for damages.

Defendant fails to articulate a legitimate, nondiscriminatory reason in its summary judgment motion.  Defendant also neglects to provide a pretext analysis;[11] instead, Defendant only claims that Plaintiff Dubois cannot prove the existence of a promotion.  The Court has already concluded facts exist as to this issue and, for this reason, Defendant's motion for summary judgment as to Plaintiff Dubois' Title VII claim is denied.[12]

B.  Racial Discrimination Under Sections 1981 and 1983

Plaintiff Dubois brings claims under Section 1981 and Section 1983.[13]  "Section 1981 does not itself create a cause of action against a municipality; rather, a plaintiff complaining of a municipality's violations of § 1981 must assert his claims via § 1983."  Crawford v. City of Houston, 260 F. App'x 650 (5th Cir. 2007); Oden v. Okitbbeha Cnty., Miss., 246 F.3d 458, 463-64 (5th Cir. 2001). In doing so, the plaintiff "cannot proceed under a theory of respondeat superior and must instead satisfy the 'custom or policy' test fashioned for suits against a municipality under § 1983." Evans v. City of Houston, 246 F.3d 344, 358 (5th Cir.

---

[11] The Court need not decide at this juncture whether this case is properly labeled a "pretext" case or a "mixed motives" case. See Smith, 602 F.3d at 333.

[12] For the *first* time in the summary judgment record, Defendant briefly raises the issue in its reply brief that Plaintiff Dubois is not "clearly better qualified" than Carl Lampton.  Despite Defendant's failure to urge this issue in its summary judgment brief, the Court nevertheless notes that genuine disputes of material fact as to whether the clearly better qualified standard has been met.

[13] In one of its rebuttal briefs, Defendant contends that the Plaintiffs have "failed to invoke the only remedy [Section 1983] available to him for the claimed deprivation of his § 1981 rights. . . ."  However, the Plaintiffs in this action have pursued Section 1983 causes of action against the City in order to assert their substantive rights under Section 1981. Specifically, the complaint states that the Plaintiffs bring causes of action arising under Title VII, Section 1981, and the Fourteenth Amendment.  The complaint then states, "This action is authorized by 42 U.S.C. § 1983 and by Title VII of the Civil Rights Act of 1964."  Thus, the complaint read in its entirety brings a Title VII claim and a Section 1983 action against the City to remedy violations of the Plaintiffs' Section 1981 substantive rights and equal protection rights.

2001). This "requires proof of three elements in addition to the underlying claim of a violation of rights: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Cox v. City of Dallas, 430 F.3d 734, 748 (5th Cir.2005) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir.2001) (internal quotation marks omitted)). The final element requires the plaintiff to prove causation; that is, that the policy or custom is the cause in fact of the rights violation. Crawford, 260 F. App'x at 652.

The Court finds that summary judgment should be denied as to both Plaintiff Dubois' Section 1981 claim brought via Section 1983 and Plaintiff's Fourteenth Amendment Equal Protection Claim brought under Section 1983. First, the Court held above that factual questions exist as to whether Plaintiff Dubois was indeed passed over for a promotion. Second, the Court has before it competent summary judgment evidence showing alleged statements from Bobby Lane relevant to the Section 1983 claims. Several police officers—including the Plaintiffs in this action—have alleged that Bobby Lane stated that he was acting at the direction of the Board when he made decisions to the structure of the City of West Point's police department. According to a written statement by Romelle Matthews to Chief Administrator Randy Jones, Bobby Lane allegedly advised as follows:

> Bobby Lane stated he is General Custard and he will run this department like General Custard. He went on to say he will do whatever the board says and that this is a Republic Board and this use [sic] to be a republic department and we are going back to being a republic department will be by the people, for the people and of the people. I then stated I hope they are fair in this and what about Randy Jones and the Mayor. He said, "Like I said what ever [sic] the board want [sic] I am going to do. This board is not playing . . . There will be changes causes that is what the board wants and they told me if I don't do this they will get rid of me.

Furthermore, it is alleged by the Plaintiffs in this action that the Board attempted to adopt a race-based arrest policy.[14]  The Court has carefully mined the quite voluminous record in this case and cannot hold as a matter of law that Plaintiff Dubois' rights secured by Section 1983—either brought via Section 1981 or the Equal Protection Clause—were not violated. This case presents numerous conflicting descriptions of a muddled set of facts, and the Court may not make credibility or factual determinations at this stage. For this reason, Defendant's summary judgment motion as to Plaintiff Dubois' racial discrimination claims is denied.

**_Plaintiff Tim Campbell_**

   A.  Racial Discrimination Under Title VII

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff does not seek to prove his case with direct evidence, instead presenting alleged circumstantial evidence and analyzing his claim under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).   In order to establish prima facie case that Defendant failed to promote Plaintiff Dubois because of his race, Plaintiff must demonstrate: "(1) [he] belongs to a protected class; (2) [he] sought and was qualified for the promotion; (3) [he] was denied the promotion; and (4) the position [he] sought was filled by someone outside the protected class." Johnson v. Louisiana ex rel Louisiana Bd. of Sup'rs,

---

[14] This is discussed in more detail *infra*.

79 F. App'x 684, 686 (5th Cir. 2003) (citing <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

Once a plaintiff has made a prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. <u>Parker v. State of La. Dep't of Educ. Special Sch. Dist.</u>, 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production-not persuasion. <u>Id.</u>

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. <u>Laxton v. Gap, Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" <u>Laxton</u>, 333 F.3d at 578 (quoting <u>Reeves</u>, 530 U.S. at 143, 120 S. Ct. 2097). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." <u>Bryant v. Compass Group USA Inc.</u>, 413 F.3d 471,

478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances." Id. Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578.

In contrast, the Fifth Circuit has modified the McDonnell Douglas formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. See generally Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004). At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001). However, the Supreme Court in Desert Palace, Inc. v. Costa held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. Id. at 101, 123 S. Ct. 2148; Smith v. Xerox Corp., 602 F.3d 320, 327-28 (5th Cir. 2010).

Here, Defendant concedes that Plaintiff Campbell has set forth a prima facie denial of promotion claim. Campbell is a Caucasian male who was qualified for the position as Acting Assistant Chief and the position was filled by Avery Cook (African American). The

burden of production thus shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. Defendant contends that Avery Cook was selected due to his "leadership" and "social" skills. In his deposition testimony, Bobby Lane stated, "I just thought Avery had those social skills, those leadership skills I was looking for and Tim does not have it."

An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection. Alvarado v. Tex. Rangers, 492 F.3d 605, 616 (5th Cir. 2007) (recognizing that McDonnell Douglas does not preclude an employer from relying on subjective reasons for its personnel decisions). Such a reason will satisfy the employer's burden of production, however, *only* if the employer articulates a clear and reasonably specific basis for its subjective assessment. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); Patrick v. Ridge, 394 F.3d 311, 316-17 (5th Cir. 2004); see also Chapman v. AI Transport, 229 F.3d 1012, 1034 (2000) ("A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."); EEOC v. Target Corp., 460 F.3d 946, 957-58 (7th Cir. 2006) (agreeing with the Eleventh Circuit that "an employer must articulate reasonably specific facts that explain how it formed its [subjective] opinion of the applicant in order to meet its burden under Burdine"). In Alvarado, a female state trooper applied for a transfer to the Texas Rangers that she did not receive. The Fifth Circuit held that the employer's subjective reason for not selecting a candidate, e.g., a subjective assessment of

the candidates' performance during an oral interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection for purposes of the candidate's discrimination claim, but only if the employer articulates a clear and reasonably specific basis for its subjective assessment. Alvarado, 492 F.3d at 616. The Fifth Circuit explained that the defendant employer had not satisfied its burden to proffer a legitimate, nondiscriminatory reason because it had provided no explanation for how the interviewers arrived at the scores for each interview, and because each score "is at least as consistent with discriminatory intent as it is with nondiscriminatory intent because [the plaintiff] may well have received the relatively low interview score on account of her sex." Id. at 617. Alvarado stands for the proposition that employers may not use entirely subjective criteria to defeat a plaintiff's prima facie case, unless the employer articulates a clear and reasonably specific basis for its subjective assessment. Id.

In this case, there are factual questions concerning the subjective criteria articulated by Defendant as its legitimate, nondiscriminatory reason. Defendant's blanket statement that Chief Lane "thought" Avery Cook had better social and leadership skills does not provide the Court with a clear and specific basis to evaluate Defendant's subjective assessment of Plaintiff Campbell. In Lindsey v. Prive Corporation, 987 F.2d 324, 326 (5th Cir. 1993), a gentlemen's club failed to promote two waitresses to dancers because they were not "beautiful, gorgeous, and sophisticated." The waitresses sued the club claiming age discrimination. See id. The district court granted summary judgment in favor of the club on the ground that the waitresses had failed to meet its subjective hiring criteria. In reversing the district court's decision, the Fifth Circuit acknowledged that an employer can make

employment decisions based on subjective criteria. <u>See id.</u> at 328.  However, the court also said that distinguishing legitimate employment decisions based entirely on subjective criteria and those in which subjective criteria serve as pretext for discrimination can only be made by weighing the employer's credibility. <u>See id.</u> at 327-28. "Beauty is in the eye of the beholder and the beholder in this case" is the employer, but the "question left for the judge or jury will not require second guessing of the [club's] personnel decisions but, rather, will require an evaluation of the credibility of the defendant's testimony about the reasons for that decision." <u>Id.</u> at 328.  The same rationale is applicable in the case *sub judice*.

In Bobby Lane's deposition testimony, he testified as follows:

Q:     Did you choose him [Avery Cook] because he was more qualified than Tim Campbell for the position?

A:     More qualified?

Q:     Yes.

A:     I don't think he was more qualified.

Q:     I'm sorry?

A:     I don't think he was more qualified. He just had those attributes that I was looking for.

Hence, Lane testified that he did not necessarily even believe Cook to be "more qualified"; rather, Cook apparently just obtained certain subjective "attributes" that Lane was looking for.  As far as objective qualifications are concerned, however, the Court notes that while Avery Cook had eight years in law enforcement, Plaintiff Campbell had twenty-four years of experience in law enforcement in the City of West Point. Avery Cook had been in a supervisory position for approximately a year, and Plaintiff Campbell had been in a

supervisory position for six years. Furthermore, Avery Cook was a sergeant, and Plaintiff Campbell was a lieutenant. Given all of the above, the Court finds genuine disputes of material facts exist concerning Defendant's legitimate, nondiscriminatory reason. Such factual questions similarly exist as to whether Plaintiff Campbell can demonstrate that Defendant's articulated reason was pretext or a motivating factor for racial discrimination.[15] Accordingly, Defendant's summary judgment motion is denied as to Plaintiff Campbell's Title VII claim.

B. Racial Discrimination Under Sections 1981 and 1983

Plaintiff Campbell additionally brings claims under Section 1981 and Section 1983.[16] "Section 1981 does not itself create a cause of action against a municipality; rather, a plaintiff complaining of a municipality's violations of § 1981 must assert his claims via § 1983." Crawford v. City of Houston, 260 F. App'x 650 (5th Cir. 2007); Oden v. Okitbbeha Cnty., Miss., 246 F.3d 458, 463-64 (5th Cir. 2001). In doing so, the plaintiff "cannot proceed under a theory of respondeat superior and must instead satisfy the 'custom or policy' test fashioned for suits against a municipality under § 1983." Evans v. City of

_____

[15] The Court need not decide at this juncture whether this case is properly labeled a "pretext" case or a "mixed motives" case. See Smith, 602 F.3d at 333.

[16] In its rebuttal brief, Defendant contends that Plaintiff Campbell "failed to invoke the only remedy [Section 1983] available to him for the claimed deprivation of his § 1981 rights. . . ." However, the Plaintiffs in this action have pursued Section 1983 causes of action against the City in order to assert their substantive rights under Section 1981. Specifically, the complaint states that the Plaintiffs bring causes of action arising under Title VII, Section 1981, and the Fourteenth Amendment. The complaint then states, "This action is authorized by 42 U.S.C. § 1983 and by Title VII of the Civil Rights Act of 1964." Thus, the complaint read in its entirety brings a Title VII claim and a Section 1983 action against the City to remedy violations of the Plaintiffs' Section 1981 substantive rights and equal protection rights.

Houston, 246 F.3d 344, 358 (5th Cir. 2001). This "requires proof of three elements in addition to the underlying claim of a violation of rights: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Cox v. City of Dallas, 430 F.3d 734, 748 (5th Cir.2005) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir.2001) (internal quotation marks omitted)). The final element requires the plaintiff to prove causation; that is, that the policy or custom is the cause in fact of the rights violation. Crawford, 260 F. App'x at 652.

The Court finds factual disputes as to both Plaintiff Campbell's Section 1981 claim brought via Section 1983 and Plaintiff's Fourteenth Amendment Equal Protection Claim brought under Section 1983. The analysis is substantially similar to that discussed *supra* regarding Plaintiff Dubois' racial discrimination claim. Specifically, the Court has before it competent summary judgment evidence demonstrating that Bobby Lane stated that he was acting at the direction of the Board when he made decisions to the structure of the City of West Point's police department. Furthermore, it is alleged by the Plaintiffs in this action that the Board attempted to adopt a race-based arrest policy. The Court has carefully mined the quite voluminous record in this case and cannot hold as a matter of law that Plaintiff Campbell's rights secured by Section 1983—either brought via Section 1981 or the Equal Protection Clause—were not violated. This case presents numerous conflicting descriptions of a muddled set of facts, and the Court may not make credibility or factual determinations at this stage. For this reason, Defendant's summary judgment motion as to Plaintiff Campbell's racial discrimination claims is denied.

*Plaintiff Romelle Matthews*

A.  Retaliation Under Title VII[17]

The McDonnell Douglas test is applicable to Title VII unlawful retaliation cases. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). A plaintiff establishes a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a) by showing that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. See Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009).

Once the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008). To survive summary judgment, plaintiff must then offer evidence that (1) the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative). See Rachid v. Jack in the Box, Inc, 376 F.3d 305, 312 (5th Cir. 2004); Smith v. Xerox Corp., 602 F.3d 320, 330-33 (5th Cir. 2010).  However, according to the Fifth Circuit, "[a] plaintiff can only avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'" Nunley v. City of Waco, 2011 WL 3861678, at *5 (5th

---

[17] Plaintiff Matthews brings two distinct retaliation claims: one for his alleged demotion and another based on his suspension and termination.  The two claims are independent causes of action; thus, the Court discusses them separately.

Cir. Sept. 1, 2011) (quoting <u>Hernandez v. Yellow Transp., Inc.</u>, 641 F.3d 118, 129 (5th Cir. 2011)). Evidence is "substantial" if it is of a quality and weight such that "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." <u>Id.</u>

In <u>Nunley</u>, the Fifth Circuit addressed retaliation post- the court's decision in <u>Smith v. Xerox Corp.</u>, 602 F.3d 320 (5th Cir. 2010), where the court held that the <u>Price Waterhouse</u> "mixed motive" framework applies to Title VII retaliation cases, and a plaintiff may show that a protected activity was a "motivating" or "substantial" factor. The Fifth Circuit in <u>Smith</u> also dispensed with the previous requirement that a plaintiff offer direct evidence of retaliation in order to proceed on the mixed-motive theory. The plaintiff in <u>Nunley</u>, relying on the <u>Smith</u> decision, argued that a Title VII retaliation claim need only offer evidence that retaliation was a factor, i.e., that the City had "mixed motives," and such evidence may be circumstantial. The Fifth Circuit, responding to such an argument, stated as follows:

> But as we explained in <u>Long v. Eastfield College</u>, 88 F.3d 300 (5th Cir. 1996), there are different tests for causation within the <u>McDonnell Douglas</u> framework—the initial "causal-link" required for making out a prima facie case, and the "but for" causation required after the employer has offered a legitimate, non-discriminatory justification. <u>Id.</u> at 305 n.4 ("At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff because the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a causal link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly. . . . The standard for establishing the 'causal link' element of the plaintiff's prima facie case is much less stringent."). Indeed, the Court's opinion in <u>Xerox</u> affirms that the <u>Price Waterhouse</u> mixed-motive approach as applied in the retaliation context preserves an employer's ability to escape liability by refuting but for

causation. <u>Xerox</u>, 602 F.3d at 333 ("[T]he mixed-motives theory is probably best viewed as a defense for an employer. This 'defense' allows the employer—once the employee presents evidence that an illegitimate reason was a motivating factor, even if not the sole factor, for the challenged employment action—to show that it would have made the same decision even without consideration of the prohibited factor." (emphasis added) (footnote and internal quotation marks omitted)); <u>see</u> <u>also</u> <u>Manaway v. Med. Ctr. of Southeast Tex.</u>, 430 Fed. Appx. 317 (5th Cir 2011) ("The burden then shifts back to the employee to 'prove that the protected conduct was a 'but for' cause of the adverse employment decision.'" (quoting <u>Hernandez</u>, 641 F.3d at 129)). Thus, our decision in <u>Xerox</u> did not dispense with this final "but for" requirement for avoiding summary judgment.

<u>Nunley</u>, 2011 WL 3861678, at *5. In short, and according to <u>Nunley</u>, the only thing the mixed-motive analysis does is increase the bar *for a defendant* to reach before the ultimate burden of proving but-for causation reverts to the plaintiff.

*Demotion*

Plaintiff Matthews asserts that he was demoted when he was moved from investigations back to patrol. Matthews maintains that this alleged demotion occurred because he "had opposed a race-based arrest policy, and because he objected to being called one of 'Bingham's Boys.'" Defendant, in contrast, contends that Matthews cannot demonstrate a prima facie case of retaliation.

*(i)        Prima Facie Case: Activity Protected Under Title VII*

Defendant, in one sentence, contends that Plaintiff has failed to show his demotion was in retaliation for any practice rendered unlawful by Title VII. Defendant neither provides legal authority for its assertion nor any further analysis. Plaintiff, on the other hand, maintains that he opposed implementing a race-based policy and that this constitutes engaging in protected activity. First, the Court finds that disputes of material fact exist as to

whether Jasper Pittman and the African-American members of the Board of Selectmen sought to implement such a policy. The Plaintiffs in the case *sub judice* have asserted that Pittman told Jesse Anderson that the police department was arresting too many African Americans, and not enough Caucasians. Pittman allegedly stated that the City of West Point wanted a balance in the number of African-American arrests and Caucasian arrests. Both Anderson and Romelle Matthews testified that they both refused to consider race when making arrests and, as a result, Pittman allegedly began referring to them as "Bingham's Boys," a term that allegedly contains a racially-offensive connotation. In his deposition testimony, Jasper Pittman acknowledged that he had a conversation with Anderson in February 2009:

> Q: Do you recall having a conversation with Jesse Anderson, telling him there were too many blacks being arrested and not enough whites – sometime around February 2009?
>
> A: February 2009? We had a conversation, but I don't think that was the – that was the sole topic of it.
>
> Q: Well, tell – tell me – well, first of all, did you discuss that issue?
>
> A: I think we discussed something similar to that.

After the new Board of Selectmen took office, Matthews and Anderson were both allegedly demoted, and Matthews was eventually suspended and discharged. Defendant contends that Jasper Pittman was only making an inquiry about the racial composition of arrestees within the City, as opposed to setting forth any type of policy. The evidence at trial may very well prove this to be true; however, the Court cannot hold this *as a matter of law* at this stage in litigation.

Second, the Court finds that, assuming the evidence at trial demonstrates that the Board desired to embrace a racially-hostile policy, Plaintiff Matthews engaged in protected activity when he allegedly opposed the implementation of such a policy. Protected activity encompasses opposition to any practice rendered unlawful by Title VII (the "opposition clause"), and participation in Title VII processes (including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII) (the "participation clause"). 42 U.S.C.2000e-3(a).

When proceeding under the opposition clause, plaintiffs need not prove that the discriminatory practices alleged were unlawful in fact; but rather that they had a reasonable belief that such conduct constituted unlawful employment practices protected by Title VII. Turner v. Baylor Richardson Med. Cnt., 476 F.3d 337, 348 (5th Cir. 2007); De Anda v. St. Joseph Hosp., 671 F.2d 850, 853 n.2 (5th Cir. 1982). The Court finds this standard met for purposes of summary judgment. See Rogers v. EEOC, 454 F.2d 234, 236 (5th Cir. 1971), cert. denied, superseded by statute on other grounds as stated in Harrington v. Harris, 118 F.3d 359, 367 n.8 (5th Cir. 1997) (reversing the lower court's finding that the complainant, a Spanish-surnamed woman, who brought a complaint before the EEOC alleging that the group of optometrists she worked for acted in a discriminatory manner in violation of Title VII by "segregating the *patients*" and espousing a very broad standard, stating that while "the district court may have viewed lightly the connection between the petitioners' alleged discrimination against its patients and Mrs. Chavez's sensibilities . . . the relationship between an employee and his working environment is of such significance as to be entitled to statutory protection . . . [P]etitioners' failure to direct intentionally any discriminatory

treatment toward Mrs. Chavez is simply not material to the finding of an unlawful employment practice.").

Viewing the evidence in the light in the most favorable to the Plaintiff, the Court is unable to hold as a matter of law that Jasper Pittman and the Board did not advise that the City wanted a racial balance in the number of arrestees. Thus, the Court is also unable to conclude as a matter of law that Defendant did not create an employment environment polluted with racially-discriminatory practices. The question thus becomes whether Romelle Matthews, as an African American, has a right[18] to oppose such an alleged racially-hostile employment practice towards Caucasians.[19] Whether a plaintiff has standing to recover for discrimination directed against persons in a protected class which he is not a member largely depends on the nature of the harm he claims to have suffered. Most courts will find standing where the plaintiff is able to point to a specific benefit or opportunity he has lost. See, e.g., Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 209-10, 93 S. Ct. 364, 34 L. Ed. 415 (1972) (a unanimous Supreme Court held that "persons aggrieved" may include those who were not themselves the objects of discrimination)[20]; EEOC v. T.I.M.E.-

---

[18] In this context, this "right" is the same as establishing "prudential standing." The Court notes that Defendant entirely failed to raise this issue. See Bd. of Miss. Levee Com'rs v. EPA, 2012 WL 695844, at *7 (5th Cir. Mar. 6, 2012) (noting that "prudential standing arguments may be waived").

[19] The Plaintiff in Rogers was a minority-group employee like the patients whom were allegedly segregated.

[20] In Trafficante, the United States Supreme Court construed the meaning of the term "person aggrieved" contained in § 810(a) of the Civil Rights Act of 1968, 42 USC § 3610(a). 409 U.S. 205, 93 S. Ct. 364. In that case, two tenants, one white and one African-American, of an apartment complex filed separate complaints with the Secretary of Housing and Urban Development. Each complaint alleged that the owner of the apartment complex

D.C. Freight, Inc., 659 F.2d 690 (5th Cir. 1981) (ruling that Caucasian truck drivers had standing to sue for discrimination against African Americans); EEOC v. Mississippi College, 626 F.2d 477 (5th Cir. 1980) (finding that the plaintiff, a Caucasian female who had charged Mississippi College with discrimination against African Americans, could "charge a violation of her own personal right to work in an environment unaffected by racial discrimination"). While it is clear that there must be an injury to the complainant, rather than only to the persons who are the direct victim of the alleged discrimination, the Court finds that Matthews has articulated such a direct and targeted injury here: his alleged demotion after opposing the implementation of an alleged racially-hostile policy.

  (ii)  *Prima Facie Case: Adverse Employment Action*

  In Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Supreme Court explained that an adverse employment

---

discriminated on the basis of race in the rental of apartments in the complex in violation of § 804 of the Civil Rights Act of 1968, 42 USC § 3604. The two tenants claimed that they had been injured in that (1) they had lost the social benefits of living in an integrated community, (2) they had missed business and professional advantages that would have accrued if they had lived with members of minority groups and (3) they had suffered embarrassment and economic damage in social, business and professional activities from being "stigmatized" as residents of a "white ghetto." Id. at 208, 93 S. Ct. 364. Justice Douglas, writing for a unanimous court, summarized the alleged injury to existing tenants by exclusion of minority persons from the apartment complex as being "the loss of important benefits from interracial associations." Id. at 209-210, 93 S. Ct. 364.  Justice Douglas, while noting that the legislative history of the Civil Rights Act of 1968 was "not too helpful," nevertheless discerned an emphasis by proponents of the legislation that "those who were not the direct objects of discrimination had an interest in ensuring fair housing, as they too suffered." Id. at 210, 93 S. Ct. 364.

action in the Title VII retaliation context depends on whether the act was materially adverse, meaning that it would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotation marks and citation omitted). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Id. at 71 (internal quotation marks and citation omitted).

Defendant asserts that Plaintiff Matthews cannot demonstrate that he suffered an adverse employment action when he was allegedly demoted. More specifically, Defendant maintains Plaintiff Matthews' title, rank, and pay were not affected when he was moved from investigations to patrol. However, "'to be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse-such as being less prestigious or less interesting or providing less room for advancement.'" Alvarado v. Texas Rangers, 492 F.3d 605, 613 (5th Cir. 2007) (quoting Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999) (citing Forsyth v. City of Dallas, 91 F.3d 769, 774 (5th Cir. 1996); Click v. Copeland, 970 F.2d 106, 109 (5th Cir. 1992); see also Serna v. City of Antonio, 244 F.3d 479, 483 (5th Cir. 2001) ("A transfer, even without an accompanying cut in pay or other tangible benefits, may constitute an adverse employment action . . . ."); Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 829 (11th Cir. 2000) ("In a Title VII case, a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige *or* responsibility.").

Here, Lane allegedly informed Matthews that he was no longer captain, but instead was just an "acting captain." Lane also allegedly advised Matthews that he would be returning to patrol, he would no longer have a car, and his responsibilities would be taken away. Matthews contends Lane also told him that as long as his pay was not affected, this could not be considered a demotion. Matthews further asserts that this alleged demotion "put [him] back as a status" and that Lane "had – one of the patrolman [Sean Keller] actually running [his] shift." Given this, and the record in its entirety, the Court finds factual disputes in existence as to whether Matthews was demoted when he was moved from investigations to patrol.

### (iii)    Prima Facie Case: Causal Link

As to the third prong, in order to establish a 'causal link' as required by the third prong of the prima facie case, a plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions. Gee v. Principi, 289 F.3d 342, 345 (5th Cir.2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). Even beyond temporal proximity alone,

> The courts have [also] sketched an outline of indicia of causation in Title VII cases, because causation is difficult to prove. Employers rarely leave concrete evidence of their retaliatory purposes and motives. For example, in Jenkins, the court looked to three factors for guidance in determining causation. First, the court examined the employee's past disciplinary record. Second, the court investigated whether the employer followed its typical policy and procedures in terminating the employee. Third, it examined the temporal relationship

> between the employee's conduct and discharge. Jenkins, 646 F. Supp. at
> 1278. This analysis is highly fact specific, as the Supreme Court recently
> noted. St. Mary's, 509 U.S. at [524], 113 S. Ct. [2742] ("the question facing
> triers of fact in discrimination cases is both sensitive and difficult.") (quoting
> United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716,
> 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403 (1983)).

Nowlin v. Resolution Trust Corp., 33 F.3d 498, 507–09 (5th Cir .1994).

Defendant contends that there is no temporal proximity; thus, Plaintiff Matthews cannot establish a prima facie case of retaliation. Defendant provides no further analysis of the causal link prong beyond this single sentence. The Court acknowledges that the temporal proximity in this action is attenuated when viewed in isolation; however, when viewed in context, the attenuation is diminished. Jasper Pittman allegedly made race-based statements regarding the arrest policy of the police department in February 2009. In the spring of 2009, Jasper Pittman (African American) allegedly confronted Matthews and accused him of racially profiling African Americans. Matthews also contends that, around the same time, Bingham, the former police chief, told him that he was getting a lot of "pressure" about the need to arrest more Caucasians. Matthews avers that he told Bingham that "it doesn't operate like that." Shortly thereafter, in July 2009, the racial composition of the Board of Selectmen changed to majority African American. Subsequently, Bingham (Caucasian) was terminated in August 2009 and, soon thereafter, he was replaced by Lane (African American). Right after Lane became the Acting Chief of Police, Matthews was allegedly demoted.

The Court finds the temporal proximity of the events occurring in this case at least minimally indicative of circumstantial evidence of retaliation, especially when coupled with

the other evidence present in this action. Plaintiff Matthews appears to have had an exemplary employment record, as he had never been written up or received any complaints prior to being allegedly demoted by Lane. After this alleged demotion, Matthews was written up by Lane approximately four times in three weeks. Plaintiff contends the reasons for such write ups were "frivolous." The Court finds Plaintiff has—for purposes of summary judgment—met his burden of demonstrating a prima facie case of retaliation.

*(iv)* *Legitimate, Non-retaliatory Reason / Pretext*

After concluding that, for purposes of summary judgment, Plaintiff has presented a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for the employment action. Here, Defendant does not provide a legitimate, non-retaliatory reason for the alleged demotion. Rather, Defendant only contends Plaintiff cannot demonstrate a prima facie case. Due to this, Defendant also neglects to urge through its summary judgment motion that Plaintiff Matthews cannot prove pretext,[21] and the Court declines to make arguments not raised or pressed by Defendant. <u>See In re Cao</u>, 619 F.3d 410, 435 (5th Cir. 2010) (noting that the role of the Court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the Court's] role is to adjudicate the arguments with which [it is] presented"). Accordingly, Defendant's motion for summary judgment as to Plaintiff Matthews' Title VII claim for retaliation due to his alleged demotion is denied.

---

[21] The Court need not decide at this juncture whether this case is properly labeled a "pretext" case or a "mixed motives" case. <u>See</u> <u>Smith</u>, 602 F.3d at 333.

*Suspension and Termination*

Matthews appears to have worked for "a couple of weeks in patrol" before he was suspended and eventually terminated. According to Matthews, after being allegedly demoted, Bobby Lane learned that he was preparing materials in order to file a charge with the EEOC. Matthews maintains that Lane found the back page of a letter written to the EEOC, and Lane questioned him about the letter. After such questioning, Lane allegedly advised Matthews that he was suspended without pay and Lane was seeking his termination with the Board. At a subsequent meeting of the Mayor and the Board of Selectmen, held on December 28, 2009, the Board voted 3-2 to terminate Plaintiff Matthews. Defendant contends that Matthews cannot demonstrate a prima facie case of retaliation. More specifically, Defendant argues that Plaintiff Matthews cannot demonstrate a causal link between his filing of the EEOC charge and his suspension and succeeding termination.

*(i)      Prima Facie Case: Activity Protected Under Title VII*

Protected activity encompasses opposition to any practice rendered unlawful by Title VII (the "opposition clause"), and participation in Title VII processes (including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII) (the "participation clause"). 42 U.S.C.2000e-3(a). When proceeding under the participation clause, there is no "reasonable belief" requirement; however, the plaintiff may be required to show that he made his claim alleging discrimination in good faith. See Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir.1969) (holding that letter to EEOC was protected activity even though it contained false, but not malicious, accusations); Mattson v. Caterpillar, Inc., 359 F.3d 885, 891-92 (7th Cir. 2004) (holding that

a good faith, reasonable requirement applies to retaliation claims based on the participation clause).  The Court finds that Plaintiff Matthews engaged in protected activity when he prepared a letter and filed a charge with the EEOC and informed Lane of this fact.[22]

    *(ii)    Prima Facie Case: Adverse Employment Action*

Plaintiff Matthews' suspension and termination constitute an adverse employment action within the context of Title VII.  This point appears to be undisputed between the parties.

    *(iii)    Prima Facie Case: Causal Link*

As to the third prong, in order to establish a 'causal link' as required by the third prong of the prima facie case, a plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions. <u>Gee v. Principi</u>, 289 F.3d 342, 345 (5th Cir.2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam).  Even beyond temporal proximity alone,

> The courts have [also] sketched an outline of indicia of causation in Title VII cases, because causation is difficult to prove. Employers rarely leave concrete evidence of their retaliatory purposes and motives. For example, in Jenkins, the court looked to three factors for guidance in determining causation. First, the court examined the employee's past disciplinary record. Second, the court investigated whether the employer followed its typical policy and procedures

---

[22] Defendant appears to concede this point, stating that "[t]he City of West Point does not dispute that complaining of actual or perceived race discrimination and/or opposition to race discrimination in the workplace are types of conduct that are protected by law."

in terminating the employee. Third, it examined the temporal relationship between the employee's conduct and discharge. <u>Jenkins</u>, 646 F. Supp. at 1278. This analysis is highly fact specific, as the Supreme Court recently noted. <u>St. Mary's</u>, 509 U.S. at [524], 113 S. Ct. [2742] ("the question facing triers of fact in discrimination cases is both sensitive and difficult.") (quoting <u>United States Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403 (1983)).

<u>Nowlin v. Resolution Trust Corp.</u>, 33 F.3d 498, 507–09 (5th Cir .1994).

Here, Plaintiff maintains that when he informed Lane he was filing an EEOC charge, Lane immediately suspended him and advised that he was seeking his termination. Thus, the timeline reflects that Matthews both filed and allegedly informed Lane of the EEOC charge in December 2009, and he was suspended immediately and subsequently discharged, also in December 2009. The Court finds the close timing alone minimally sufficient for purposes of the motion at bar to establish a prima facie case of retaliation.

### (iv)    *Legitimate, Non-retaliatory Reason*

After concluding that, for purposes of summary judgment, Plaintiff has presented a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for the employment action. Here, Defendant maintains that it suspended and terminated Plaintiff Matthews due to insubordination, conduct unbecoming of an officer, and poor job performance. This articulated reason satisfies Defendant's burden of production.

### (v)    *Pretext / Mixed Motives*

In order to survive summary judgment, Plaintiff must offer evidence that (1) the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and

another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative). The Court finds that Plaintiff has met his burden at the summary judgment stage of demonstrating pretext.

First, Matthews alleges the following exchange took place between him and Bobby Lane:

> Q: All right. How long ultimately after that did you remain in patrol?
>
> A: Up until he found a back page of the letter that I wrote to the EEOC. And that's when he called me to the office and said – asked me did I write the letter. And I said, Yes.
>
> He said, Do you know what this is? I said, Yes. Are you familiar with it? I said, Yes. He said, Did you write it? I said, Yes. He said, Did you write it? Yes. He said, Well, **in that case,** then, I'm seeking – I'm suspending you without pay, and I'm seeking termination from the board.

Second, Plaintiff contends that Defendant's legitimate, non-retaliatory reason is unworthy of credence. Lane filed approximately four written complaints against Matthews in three weeks; however, Matthews had not been reprimanded or written up in two and a half years prior to this.[23] Further, CAO Randy Jones authored a letter of recommendation for Plaintiff Matthews in September 2010, attesting to the "superb talents" of Plaintiff Matthews. Further, Matthews contends that Randy Jones told him, "I think you have a good EEOC complaint, and you need to file it." Given this, as well as the record evidence as a whole,

---

[23] One of the Board members, Homer Cannon, testified in his deposition that the reasoning behind Matthews' termination was not his job performance.

the Court concludes that disputes of material facts exist as to whether Defendant's reasons for terminating Plaintiff Matthews were pretext for a proscribed retaliatory motive. [24]

B.  Retaliation Under Section 1981

*Demotion*

Plaintiff also brings his retaliation claim based on his demotion under 42 U.S.C. § 1981.[25]  Section 1981(a) provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Supreme Court has held that Section 1981 encompasses "the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." See CBOCS West, Inc. v. Humphries, 553 U.S. 442, ----, 128 S. Ct. 1951, 1958, 170 L. Ed. 2d 864 (2008). Recovery against a municipality under § 1981 may not be predicated on a theory of respondeat superior. Monell v. Dep't of Soc. Serv. of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 56

---

[24] The Court need not decide at this juncture whether this case is properly labeled a "pretext" case or a "mixed motives" case. See Smith, 602 F.3d at 333.

[25] In one of its rebuttal briefs, Defendant contends that the Plaintiffs have "failed to invoke the only remedy [Section 1983] available to him for the claimed deprivation of his § 1981 rights. . . ."  However, the Plaintiffs in this action have pursued Section 1983 causes of action against the City in order to assert their substantive rights under Section 1981. Specifically, the complaint states that the Plaintiffs bring causes of action arising under Title VII, Section 1981, and the Fourteenth Amendment.  The complaint then states, "This action is authorized by 42 U.S.C. § 1983 and by Title VII of the Civil Rights Act of 1964."  Thus, the complaint read in its entirety brings a Title VII claim and a Section 1983 action against the City to remedy violations of the Plaintiffs' Section 1981 substantive rights and equal protection rights.

L. Ed. 2d 611 (1978); <u>Evans v. City of Houston</u>, 246 F.3d 344, 357 (5th Cir. 2001). Rather, a municipality may be held liable under § 1981 for the deprivation of rights guaranteed by the Constitution or federal law only if the deprivation was the result of an official policy or custom. <u>Evans</u>, 246 F.3d at 358 (applying "custom or policy" test for municipality liability under 42 U.S.C. § 1983 to claim against city under § 1981).

The Fifth Circuit has defined an "official policy" as

> [a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is [a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

<u>Id.</u> (internal citations and quotation marks omitted, brackets in original).

Plaintiff has presented factual disputes as to whether he was retaliated against for opposing an alleged race-based policy stemming from the final policymaker for the City: the Board of Selectmen. While admitting that the Board is the final policymaker for personnel matters relating to the City of West Point, Defendant contends that a Board member *individually* (referring to Jasper Pittman) cannot make policy as a matter of law. It is logical that a Board may transact official business only through a quorum consisting of a majority of its members. Here, however, there is competent summary judgment evidence illustrating that Lane was allegedly acting at the direction of the Board, as opposed to at the direction of one individual board member, when he made structural changes within the police department.

As it relates to the alleged race-based arrest policy, Defendant contends that the alleged statements giving rise to allegations of such a policy came from one Board member (Jasper Pittman), and the statements are not reflected in the Board minutes. While the Court does not have before it concrete evidence that each and every member of the Board of Selectmen allegedly sought to adopt an "unofficial" race-based arrest policy, the Court finds that, in light of the record in its entirety, there is circumstantial evidence demonstrating that an African-American Board member (Jasper Pittman) allegedly approached Jesse Anderson about the police department arresting too many African Americans and not enough Caucasians. There are at least factual disputes in existence as to whether the City wanted a racial "balance" in the number of arrests, and that Matthews opposed the implementation of such a policy. The evidence taken as a whole creates fact issues as to whether Plaintiff Matthews' rights secured by Section 1981 (brought via Section 1983) were violated when he was allegedly demoted. The Court may not make credibility or factual determinations at this stage in litigation; thus, Defendant's motion for summary judgment as to this claim is denied.

*Termination*

Plaintiff also brings his retaliation claim based on his termination under 42 U.S.C. § 1981. Section 1981(a) provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Supreme Court has held that Section 1981 encompasses "the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." See CBOCS West, Inc. v. Humphries, 553 U.S. 442, ----, 128 S. Ct. 1951, 1958, 170 L. Ed. 2d 864 (2008). Recovery against a municipality under § 1981 may not be predicated on a theory of respondeat superior. Monell v. Dep't of Soc. Serv. of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Evans v. City of Houston, 246 F.3d 344, 357 (5th Cir.2001). Rather, a municipality may be held liable under § 1981 for the deprivation of rights guaranteed by the Constitution or federal law only if the deprivation was the result of an official policy or custom. Evans, 246 F.3d at 358 (applying "custom or policy" test for municipality liability under 42 U.S.C. § 1983 to claim against city under § 1981).

The Fifth Circuit has defined an "official policy" as

[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is [a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

Id. (internal citations and quotation marks omitted, brackets in original). Here, Plaintiff Matthews' termination claim falls on different footing than his demotion claim. Matthews does not allege that he was terminated for opposing any City policy. In contrast, he *only* alleges he was terminated in retaliation for filing an EEOC charge. Plaintiff has not presented any evidence—or even alleged—that the City had a policy or custom, be it official or unofficial, of terminating employees due to the filing of EEOC charges. Plaintiff has also

presented no evidence that Bobby Lane was acting at the direction of the Board when he suspended Matthews without pay and stated that he was seeking his termination.[26] Accordingly, Defendant's motion for summary judgment as to Plaintiff's Section 1981 termination claim is granted.

### C. Retaliation Under the Equal Protection Clause

Plaintiff also brings his retaliation claims pursuant to the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983. The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen. of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313

---

[26] The Court notes that "ratification" can act as one theory of proving Monell liability. That is, in City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988), the Supreme Court provided that if "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." 485 U.S. at 127, 108 S. Ct. 915. The theory of ratification, however, has been limited to "extreme factual situations." Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 848, 2009 WL 3818826, at *7 (5th Cir. 2009); Coon v. Ledbetter, 780 F.2d 1158, 1161 (5th Cir. 1986). Here, Plaintiff does not proceed under this theory. In fact, Plaintiff fails to even allege "ratification" as a theory of liability. See In re Cao, 619 F.3d 410, 435 (5th Cir. 2010) (noting that the role of the Court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the Court's] role is to adjudicate the arguments with which [it is] presented"). Nonetheless, the Court notes that ratification does not appear to be met in this action, as the *only* evidence the Court has before it is that Bobby Lane advised the Board that it was his recommendation that Matthews be terminated *due to Matthews' alleged subpar work performance and insubordination—not due to the filing or preparation of any EEOC charge*. See Williams v. Valenti, 432 F. App'x 298, 303 (5th Cir. 2011) (noting that the district court is "not required to search the record in support of evidence supporting a party's opposition to summary judgment").

(1985)); accord Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982); Priester v. Lowndes Cnty., 354 F.3d 414, 424 (5th Cir. 2004); Beeler v. Rounsavall, 328 F.3d 813, 816 (5th Cir.), *cert. denied*, 540 U.S. 1048, 124 S. Ct. 820, 157 L. Ed. 2d 697 (2003); Bryan v. City of Madison, 213 F.3d 267, 276 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145, 121 S. Ct. 1081, 148 L. Ed. 2d 957 (2001); Mayabb v. Johnson, 168 F.3d 863, 870 (5th Cir.), cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999); Stefanoff v. Hays Cnty., 154 F.3d 523, 525-26 (5th Cir. 1998). "'[W]henever the government treats any person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection.'" Grutter v. Bollinger, 539 U.S. 306, 327, 123 S. Ct. 2325, 156 L. Ed. 2d 304 (2003) (quoting Adarand Constructors, Inc. v. Peña, 515 U.S. 200, 229-30, 115 S. Ct. 2097, 132 L. Ed. 2d 158 (1995)).

A municipality is a "person" subject to suit under Section 1983. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (quoting Monell, 436 U.S. at 690, 98 S. Ct. 2018). Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. Monell, 436 U.S. at 690-91, 98 S. Ct. 2018. "[M]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights

whose moving force is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted).

Here, Plaintiff Matthews has expressly disavowed any discrimination claims brought in this action. See Docket [83]. Thus, Plaintiff's equal protection claim is based solely on retaliation.[27] Although claims of retaliation are commonly brought under the First Amendment and may also be brought under Title VII, retaliation claims growing out of complaints of employment discrimination have not been recognized under the Equal Protection Clause of the Fourteenth Amendment. As Judge Jordan has recently noted, "the Equal Protection Clause does not preclude workplace retaliation." Robinson v. Jackson Public School Dist., 2011 WL 198127, at *5 (S.D. Miss. Jan. 20 2011); see also, e.g., Teigen v. Renfrow, 511 F.3d 1072, 1086 (10th Cir. 2007) ("The mere illegality of a retaliatory action under a separate body of law does not make the resulting classification so illegitimate, irrational, or arbitrary as to violate the Equal Protection Clause"); R.S. W.W., Inc. v. City of Keego Harbor, 397 F.3d 427, 440 (6th Cir. 2005); Watkins v. Bowden, 105 F.3d 1344 (11th Cir. 1997) (per curiam) ("A [ ] retaliation claim, however, simply does not implicate the Equal Protection Clause."); Boyd v. Illinois State Police, 384 F.3d 888, 898 (7th Cir.2004); Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir.1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of

_____

[27] In its order allowing an opportunity to respond [84], the Court gave the parties ample time to submit further briefing on this issue if the parties desired to do so. See FED. R. CIV. P. 56(f). In the Court's prior clarification order [82], the Court even noted that there is quite a distinction between an equal protection action based on discrimination and one based on retaliation. Despite this, the parties failed to submit any further briefing on the issue.

racial discrimination."); <u>Ratliff v. DeKalb County</u>, 62 F.3d 338, 340-41 (11th Cir. 1995) (reversing denial of qualified immunity on equal protection retaliation claim because "[t]he right to be free from retaliation [for making complaints of discrimination] is clearly established as a *First Amendment* right and as a *statutory right* under Title VII; but no clearly established right exists under the *Equal Protection Clause* to be free from retaliation"); <u>Gray v. Lacke</u>, 885 F.2d 399, 414 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S. Ct. 1476, 108 L. Ed. 2d 613 (1990) ("Gray's right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause."); <u>Yatvin v. Madison Metro. Sch. Dist.</u>, 840 F.2d 412, 418-19 (7th Cir.1988); <u>Tafoya v. Adams</u>, 816 F.2d 555, 558 (10th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987); <u>Smith v. City of Easton</u>, 2010 WL 413051, at *4 (E.D. Tex. Jan. 27, 2010); <u>Tinoco v. Raleeh</u>, 2006 WL 27287, at *2 (E.D. Tex. Jan.5, 2006); <u>Cordova v. City of Mansfield</u>, 2006 WL 2513923, at *7 (W.D. La. Aug. 29, 2006) ("[A]s a matter of law, there is no such thing as a retaliation claim under the Equal Protection Clause[.]"); <u>Gates v. City of Dallas</u>, 1998 WL 401602, at *4-5 (N.D. Tex. July 15, 1998) (noting that "retaliation does not support an equal protection claim" and that the plaintiffs' "retaliation-based Equal Protection Clause claim is meritless as a matter of law"). Thus, Matthews' retaliation claim is not actionable under the Fourteenth Amendment's Equal Protection Clause.

*Plaintiff Jesse Anderson*

A.  Retaliation Under Title VII

The McDonnell Douglas test is applicable to Title VII unlawful retaliation cases. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). A plaintiff establishes a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a) by showing that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. See Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009).

Once the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008). To survive summary judgment, plaintiff must then offer evidence that (1) the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative). See Rachid v. Jack in the Box, Inc, 376 F.3d 305, 312 (5th Cir. 2004); Smith v. Xerox Corp., 602 F.3d 320, 330-33 (5th Cir. 2010).  However, according to the Fifth Circuit, "[a] plaintiff can only avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'" Nunley v. City of Waco, 2011 WL 3861678, at *5 (5th Cir. Sept. 1, 2011) (quoting Hernandez v. Yellow Transp., Inc., 641 F.3d 118, 129 (5th Cir. 2011)). Evidence is "substantial" if it is of a quality and weight such that "reasonable and

fair-minded men in the exercise of impartial judgment might reach different conclusions."

Id.

In Nunley, the Fifth Circuit addressed retaliation post- the court's decision in Smith v. Xerox Corp., 602 F.3d 320 (5th Cir. 2010), where the court held that the Price Waterhouse "mixed motive" framework applies to Title VII retaliation cases, and a plaintiff may show that a protected activity was a "motivating" or "substantial" factor. The Fifth Circuit in Smith also dispensed with the previous requirement that a plaintiff offer direct evidence of retaliation in order to proceed on the mixed-motive theory. The plaintiff in Nunley, relying on the Smith decision, argued that a Title VII retaliation claim need only offer evidence that retaliation was a factor, i.e., that the City had "mixed motives," and such evidence may be circumstantial. The Fifth Circuit, responding to such an argument, stated as follows:

> But as we explained in Long v. Eastfield College, 88 F.3d 300 (5th Cir. 1996), there are different tests for causation within the McDonnell Douglas framework—the initial "causal-link" required for making out a prima facie case, and the "but for" causation required after the employer has offered a legitimate, non-discriminatory justification. Id. at 305 n.4 ("At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff because the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a causal link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly. . . . The standard for establishing the 'causal link' element of the plaintiff's prima facie case is much less stringent."). Indeed, the Court's opinion in Xerox affirms that the Price Waterhouse mixed-motive approach as applied in the retaliation context preserves an employer's ability to escape liability by refuting but for causation. Xerox, 602 F.3d at 333 ("[T]he mixed-motives theory is probably best viewed as a defense for an employer. This 'defense' allows the employer—once the employee presents evidence that an illegitimate reason was a motivating factor, even if not the sole factor, for the challenged

employment action—to show that it would have made the same decision even without consideration of the prohibited factor." (emphasis added) (footnote and internal quotation marks omitted)); <u>see</u> <u>also</u> <u>Manaway v. Med. Ctr. of Southeast Tex.</u>, 430 Fed. Appx. 317 (5th Cir 2011) ("The burden then shifts back to the employee to 'prove that the protected conduct was a 'but for' cause of the adverse employment decision.'" (quoting <u>Hernandez</u>, 641 F.3d at 129)). Thus, our decision in <u>Xerox</u> did not dispense with this final "but for" requirement for avoiding summary judgment.

<u>Nunley</u>, 2011 WL 3861678, at *5. In short, and according to <u>Nunley</u>, the only thing the mixed-motive analysis does is increase the bar *for a defendant* to reach before the ultimate burden of proving but-for causation reverts to the plaintiff.

*Demotion*

Plaintiff Anderson asserts that he was demoted when he was moved from narcotics back to patrol. Anderson maintains that this alleged demotion occurred because he had opposed a race-based arrest policy, and because he objected to being called a racially-offensive name. Defendant, in contrast, appears to contend that Anderson cannot demonstrate a prima facie case of retaliation.[28]

(i)     *Prima Facie Case: Activity Protected Under Title VII*

The Court finds that the analysis required for Plaintiff Anderson's action is substantially similar to the analysis discussed *supra* concerning Plaintiff Matthews' claims

---

[28] Defendant's motion for summary judgment actually contends that "Plaintiff's Title VII *race discrimination* claim fails as a matter of law." Plaintiff Anderson has not alleged a claim of race discrimination. <u>See</u> Docket [83]. After the Court ordered Plaintiff Anderson to clarify his claims, the Court allowed the parties time to submit additional briefing. <u>See</u> Docket [84]. Thus, after Plaintiff clarified that he was only alleging a claim for retaliation, Defendant was given the opportunity to supplement its motion for summary judgment. Defendant did not do so. Despite this, Defendant does at least include arguments in its brief that the Court can construe as relating to some of the elements necessary to prove a Title VII retaliation claim

of retaliation. Disputes of material fact exist as to whether Jasper Pittman and the African-American members of the Board sought to implement a race-based arrest policy. The Plaintiffs have asserted that Pittman told Anderson that the police department was arresting too many African Americans, and not enough Caucasians. Pittman allegedly stated that the City of West Point wanted a balance in the number of African-American arrests and Caucasian arrests. Both Anderson and Romelle Matthews testified that they both refused to consider race when making arrests and, as a result, Pittman allegedly began referring to them as "Bingham's Boys," a term that allegedly contains a racially-offensive connotation. In his deposition testimony, Pittman acknowledged that he had a conversation with Anderson in February 2009:

> Q:    Do you recall having a conversation with Jesse Anderson, telling him there were too many blacks being arrested and not enough whites – sometime around February 2009?
>
> A:    February 2009? We had a conversation, but I don't think that was the – that was the sole topic of it.
>
> Q:    Well, tell – tell me – well, first of all, did you discuss that issue?
>
> A:    I think we discussed something similar to that.

After the new Board took office, Matthews and Anderson were both allegedly demoted. Defendant contends that Jasper Pittman was only making an inquiry about the racial composition of arrestees within the City, as opposed to setting forth any type of policy. The evidence at trial may very well prove this to be true; however, the Court cannot hold this as a matter of law at this stage in litigation.

*(ii)*     *Prima Facie Case: Adverse Employment Action*

In <u>Burlington Northern and Santa Fe Railway Co. v. White</u>, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Supreme Court explained that an adverse employment action in the Title VII retaliation context depends on whether the act was materially adverse, meaning that it would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> at 68 (internal quotation marks and citation omitted). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." <u>Id.</u> at 71 (internal quotation marks and citation omitted).

Defendant asserts that Plaintiff Anderson cannot demonstrate that he suffered an adverse employment action when he was allegedly demoted. More specifically, Defendant maintains Plaintiff Anderson's title, rank, and pay were not affected when he was moved from narcotics to patrol. However, "'to be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse-such as being less prestigious or less interesting or providing less room for advancement.'" <u>Alvarado v. Texas Rangers</u>, 492 F.3d 605, 613 (5th Cir. 2007) (quoting <u>Sharp v. City of Houston</u>, 164 F.3d 923, 933 (5th Cir. 1999) (citing <u>Forsyth v. City of Dallas</u>, 91 F.3d 769, 774 (5th Cir. 1996); <u>Click v. Copeland</u>, 970 F.2d 106, 109 (5th Cir. 1992); <u>see</u> <u>also</u> <u>Serna v. City of Antonio</u>, 244 F.3d 479, 483 (5th Cir. 2001) ("A transfer, even without an accompanying cut in pay or other tangible benefits, may constitute an adverse employment action . . . ."); <u>Hinson v. Clinch County, Ga. Bd. of Educ.</u>, 231 F.3d

821, 829 (11th Cir.2000) ("In a Title VII case, a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility.").

Defendant appears to contend that Anderson was never in a supervisory position over narcotics; thus, he was not "demoted" when moved back to patrol. As discussed *supra* under the claims asserted by Plaintiff Dubois, Bobby Lane informed the police department at the November 2009 meeting that Plaintiff Anderson would be returning to patrol and Carl Lampton (African American) would replace Anderson in narcotics. In a written letter to Chief Administrator Randy Jones, Dubois noted as follows:

> As of Thursday November 12th 2009 I, Sgt. Jeremy Dubois was informed by Interim Chief Bobby Lane, during a meeting held at 4:00pm that Sgt. Jesse Anderson was being moved out of narcotics investigation, and back to patrol. **Chief Lane advised that Sgt. Carl Lampton was going to be placed over narcotics**, and that I was going to have to teach him about working narcotics investigations.

Dubois further testified in his deposition that Jesse Anderson was in a supervisory position over him prior to Anderson being moved to patrol. Lampton's deposition testimony also supports the fact that Anderson's former position in narcotics may have been "supervisory." Lampoton testified as follows:

> Q:  When you were moved to narcotics, were you put over Jeremy Dubois?
>
> A:  Yes, sir.
>
> Q:  Who told you that?
>
> A:  Bobby Lane.
>
> Q:  What did he tell you specifically?
>
> A:  You're going to be running my narcotics division.

Q:     And so, Jeremy was working for you?

A:     You could say that, but –

Q:     Is that what Bobby Lane said?

A:     Yeah. That's what he said. Yeah.

Given this, factual disputes exist as to whether the position formerly filled by Anderson was a supervisory position within the narcotics division. As such, the Court cannot hold as a matter of law that Anderson's move back to patrol was not a demotion.

    *(iii)*     *Prima Facie Case: Causal Link*

As to the third prong, in order to establish a 'causal link' as required by the third prong of the prima facie case, a plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions. <u>Gee v. Principi</u>, 289 F.3d 342, 345 (5th Cir.2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). Even beyond temporal proximity alone,

> The courts have [also] sketched an outline of indicia of causation in Title VII cases, because causation is difficult to prove. Employers rarely leave concrete evidence of their retaliatory purposes and motives. For example, in Jenkins, the court looked to three factors for guidance in determining causation. First, the court examined the employee's past disciplinary record. Second, the court investigated whether the employer followed its typical policy and procedures in terminating the employee. Third, it examined the temporal relationship between the employee's conduct and discharge<u>. Jenkins</u>, 646 F. Supp. at 1278. This analysis is highly fact specific, as the Supreme Court recently noted. <u>St. Mary's</u>, 509 U.S. at [524], 113 S. Ct. [2742] ("the question facing triers of fact in discrimination cases is both sensitive and difficult.") (quoting

United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403 (1983)).

Nowlin v. Resolution Trust Corp., 33 F.3d 498, 507–09 (5th Cir .1994).

Defendant contends that there is no temporal proximity; thus, Plaintiff Anderson cannot establish a prima facie case of retaliation. Defendant provides no further analysis of the causal link prong. The Court acknowledges that the temporal proximity in this action is attenuated when viewed in isolation; however, when viewed in context, the attenuation is diminished. Anderson contends that in February 2009, Selectman Jasper Pittman approached him about the racial composition of the individuals being arrested in the City of West Point. Pittman allegedly told Anderson that "we arrested too many blacks." Anderson declares that he advised Pittman that the police department was not receiving any actionable information on Caucasians selling narcotics that they could arrest. Anderson allegedly then confronted Pittman about Pittman referring to him as "Bingham's Boy." According to Matthews, Anderson, and Zate McGee, another police officer, "Bingham's boy" was a racially derogatory term. Specifically, the term has been likened to being called a "house n----r" or an "Uncle Tom."

Further, in the spring of 2009, Jasper Pittman allegedly confronted Plaintiff Matthews and accused him of racially profiling African Americans. Plaintiff Matthews has also stated that, around the same time, Bingham, the former police chief, told him that he was getting a lot of "pressure" about the need to arrest more Caucasians. Matthews avers that he told Bingham that "it doesn't operate like that." Shortly thereafter, in July 2009, the racial composition of the Board of Selectmen changed to majority African American.

Subsequently, Bingham (Caucasian) was terminated in August 2009 and, soon thereafter, he was replaced by Lane (African American). Right after Lane became the Acting Chief of Police, Anderson was allegedly demoted. The Court finds the temporal proximity of the events occurring in this case at least minimally indicative of circumstantial evidence of retaliation, especially when coupled with the other evidence present in this action, including Anderson's past disciplinary and employment record. Therefore, the Court finds Plaintiff has—for purposes of summary judgment—met his burden of demonstrating a prima facie case of retaliation.

      *(iv)*     *Legitimate, Non-retaliatory Reason / Pretext*

After concluding that, for purposes of summary judgment, Plaintiff has presented a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for the employment action. Here, Defendant does not provide a legitimate, non-retaliatory reason for the alleged demotion. Rather, Defendant only contends Plaintiff cannot demonstrate a prima facie case. Due to this, Defendant also neglects to urge through its summary judgment motion that Plaintiff Anderson cannot prove pretext,[29] and the Court declines to make arguments not raised or pressed by Defendant. <u>See In re Cao</u>, 619 F.3d 410, 435 (5th Cir. 2010) (noting that the role of the Court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the Court's] role is to adjudicate the arguments with which [it is] presented").

---

[29] The Court need not decide at this juncture whether this case is properly labeled a "pretext" case or a "mixed motives" case. <u>See</u> <u>Smith</u>, 602 F.3d at 333.

Accordingly, Defendant's motion for summary judgment as to Plaintiff Matthews' Title VII

claim for retaliation due to his alleged demotion is denied.

B.  Retaliation Under Section 1981

*Demotion*

Plaintiff Anderson also alleges his retaliation claims based on his demotion under 42

U.S.C. § 1981.[30]  Section 1981(a) provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and to no other.

The Supreme Court has held that Section 1981 encompasses "the claim of an individual

(black or white) who suffers retaliation because he has tried to help a different individual,

suffering direct racial discrimination, secure his § 1981 rights." See CBOCS West, Inc. v.

Humphries, 553 U.S. 442, ----, 128 S. Ct. 1951, 1958, 170 L. Ed. 2d 864 (2008). Recovery

against a municipality under § 1981 may not be predicated on a theory of respondeat

superior. Monell v. Dep't of Soc. Serv. of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 56

L. Ed. 2d 611 (1978); Evans v. City of Houston, 246 F.3d 344, 357 (5th Cir.2001). Rather, a

---

[30] In one of its rebuttal briefs, Defendant contends that the Plaintiffs have "failed to invoke the only remedy [Section 1983] available to him for the claimed deprivation of his § 1981 rights. . . ."  However, the Plaintiffs in this action have pursued Section 1983 causes of action against the City in order to assert their substantive rights under Section 1981. Specifically, the complaint states that the Plaintiffs bring causes of action arising under Title VII, Section 1981, and the Fourteenth Amendment.  The complaint then states, "This action is authorized by 42 U.S.C. § 1983 and by Title VII of the Civil Rights Act of 1964."  Thus, the complaint read in its entirety brings a Title VII claim and a Section 1983 action against the City to remedy violations of the Plaintiffs' Section 1981 substantive rights and equal protection rights.

municipality may be held liable under § 1981 for the deprivation of rights guaranteed by the Constitution or federal law only if the deprivation was the result of an official policy or custom. <u>Evans</u>, 246 F.3d at 358 (applying "custom or policy" test for municipality liability under 42 U.S.C. § 1983 to claim against city under § 1981).

> The Fifth Circuit has defined an "official policy" as
>
> [a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is [a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

<u>Id.</u> (internal citations and quotation marks omitted, brackets in original). Here, Defendant has not made a motion for summary judgment on Plaintiff's Section 1981 *retaliation* claim. Defendant's motion for summary judgment concerning Plaintiff's 1981 action is only one for racial *discrimination*.[31] The Court provided Defendant an opportunity to submit any additional materials or briefing after ordering Plaintiff to clarify his claims. <u>See</u> Docket [84]. In fact, the Court allowed such an opportunity in part so that Defendant could supplement its original summary judgment motions given that Plaintiffs Matthews and Anderson disavowed their discrimination claims and expressly made clear their actions were for retaliation. Defendant opted not to do so, and the Court declines to generate arguments at

---

[31] Defendant asserts that "Plaintiff's race discrimination claim brought pursuant to 42 U.S.C. § 1981 fails as a matter of law." Defendant also contends that Plaintiff Anderson's claims "fail for the same reasons any Title VII claim by the Plaintiff fails." The Court has already concluded that factual disputes exist concerning Plaintiff Anderson's Title VII claim.

the summary judgment stage for Defendant.[32] <u>See</u> <u>In re Cao</u>, 619 F.3d 410, 435 (5th Cir. 2010) (noting that the role of the Court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the Court's] role is to adjudicate the arguments with which [it is] presented"). Accordingly, Defendant's motion for summary judgment as to Plaintiff Anderson's Section 1981 retaliation claim is denied.

C. <u>Retaliation Under the Equal Protection Clause</u>

Plaintiff also brings his retaliation claim pursuant to the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983. The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" <u>Artway v. Attorney Gen. of N.J.</u>, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)); <u>accord</u> <u>Plyler v. Doe</u>, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982); <u>Priester v. Lowndes Cnty.</u>, 354 F.3d 414, 424 (5th Cir. 2004); <u>Beeler v. Rounsavall</u>, 328 F.3d 813, 816 (5th Cir.), <i>cert. denied</i>, 540 U.S. 1048, 124 S. Ct. 820, 157 L. Ed. 2d 697 (2003); <u>Bryan v. City of Madison</u>, 213 F.3d 267, 276 (5th Cir. 2000), <i>cert. denied</i>, 531 U.S. 1145, 121 S. Ct. 1081, 148 L. Ed. 2d 957 (2001); <u>Mayabb v. Johnson</u>, 168 F.3d 863, 870 (5th Cir.), <u>cert. denied</u>, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999); <u>Stefanoff v. Hays Cnty.</u>, 154 F.3d 523, 525-26 (5th Cir. 1998). "'[W]henever the government treats any

---

[32] Nevertheless, the Court does note that the analysis required for Plaintiff Anderson's Section 1981 claim is substantially similar to the analysis discussed <i>supra</i> concerning Plaintiff Matthews' alleged demotion.

person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection.'" Grutter v. Bollinger, 539 U.S. 306, 327, 123 S. Ct. 2325, 156 L. Ed. 2d 304 (2003) (quoting Adarand Constructors, Inc. v. Peña, 515 U.S. 200, 229-30, 115 S. Ct. 2097, 132 L. Ed. 2d 158 (1995)).

A municipality is a "person" subject to suit under Section 1983. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (quoting Monell, 436 U.S. at 690, 98 S. Ct. 2018). Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. Monell, 436 U.S. at 690-91, 98 S. Ct. 2018. "[M]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted).

Here, Plaintiff Anderson has expressly disavowed any discrimination claims brought in this action. See Docket [83]. Thus, Plaintiff's equal protection claim is based solely on retaliation.[33] Although claims of retaliation are commonly brought under the First

---

[33] In its order allowing an opportunity to respond [84], the Court gave the parties ample time to submit further briefing on this issue if the parties desired to do so. See FED.

Amendment and may also be brought under Title VII, retaliation claims growing out of complaints of employment discrimination have not been recognized under the Equal Protection Clause of the Fourteenth Amendment.

As Judge Jordan has recently noted, "the Equal Protection Clause does not preclude workplace retaliation." Robinson v. Jackson Public School Dist., 2011 WL 198127, at *5 (S.D. Miss. Jan. 20 2011); see also, e.g., Teigen v. Renfrow, 511 F.3d 1072, 1086 (10th Cir. 2007) ("The mere illegality of a retaliatory action under a separate body of law does not make the resulting classification so illegitimate, irrational, or arbitrary as to violate the Equal Protection Clause"); R.S. W.W., Inc. v. City of Keego Harbor, 397 F.3d 427, 440 (6th Cir. 2005); Watkins v. Bowden, 105 F.3d 1344 (11th Cir. 1997) (per curiam) ("A [ ] retaliation claim, however, simply does not implicate the Equal Protection Clause."); Boyd v. Illinois State Police, 384 F.3d 888, 898 (7th Cir. 2004); Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination,"); Ratliff v. DeKalb County, 62 F.3d 338, 340-41 (11th Cir. 1995) (reversing denial of qualified immunity on equal protection retaliation claim because "[t]he right to be free from retaliation [for making complaints of discrimination] is clearly established as a *First Amendment* right and as a *statutory right* under Title VII; but no clearly established right exists under the *Equal Protection Clause* to be free from retaliation"); Gray v. Lacke, 885 F.2d 399, 414 (7th Cir.

---

R. CIV. P. 56(f).  In the Court's prior clarification order [82], the Court even noted that there is quite a distinction between an equal protection action based on discrimination and one based on retaliation.  Despite this, the parties failed to submit any further briefing on the issue.

1989), *cert. denied*, 494 U.S. 1029, 110 S. Ct. 1476, 108 L. Ed. 2d 613 (1990) ("Gray's right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause."); <u>Yatvin v. Madison Metro. Sch. Dist.</u>, 840 F.2d 412, 418-19 (7th Cir. 1988); <u>Tafoya v. Adams</u>, 816 F.2d 555, 558 (10th Cir.), *cert. denied*, 484 U.S. 851, 108 S. Ct. 152, 98 L. Ed. 2d 108 (1987); <u>Smith v. City of Easton</u>, 2010 WL 413051, at *4 (E.D. Tex. Jan. 27, 2010); <u>Tinoco v. Raleeh</u>, 2006 WL 27287, at *2 (E.D. Tex. Jan.5, 2006); <u>Cordova v. City of Mansfield</u>, 2006 WL 2513923, at *7 (W.D. La. Aug. 29, 2006) ("[A]s a matter of law, there is no such thing as a retaliation claim under the Equal Protection Clause[.]"); <u>Gates v. City of Dallas</u>, 1998 WL 401602, at *4-5 (N.D. Tex. July 15, 1998) (noting that "retaliation does not support an equal protection claim" and that the plaintiffs' "retaliation-based Equal Protection Clause claim is meritless as a matter of law"). Thus, Anderson's retaliation claim is not actionable under § 1983 via the Fourteenth Amendment's Equal Protection Clause.

## **CONCLUSION**

For the reasons stated above, Defendant's Motions for Summary Judgment [50, 52, 55, 59] are GRANTED in part and DENIED in part:

The Motion for Summary Judgment [52] as to Plaintiff Dubois is DENIED in its entirety.

The Motion for Summary Judgment [50] as to Plaintiff Campbell is DENIED in its entirety.

The Motion for Summary Judgment [59] as to Plaintiff Mathews is GRANTED in part and DENIED in part. The motion is DENIED as to Plaintiff Matthews' Title VII retaliation claims for demotion and suspension/termination. The motion is DENIED as to Plaintiff Matthews' Section 1981 retaliation claim based on his alleged demotion brought pursuant to Section 1983. The motion is GRANTED as to Plaintiff Matthews' Section 1981 retaliation claim based on his suspension/termination brought pursuant to Section 1983. The motion is GRANTED as to Plaintiff Matthews' retaliation claims based on his alleged demotion and suspension/termination brought under the Equal Protection Clause of the Fourteenth Amendment pursuant to Section 1983.

The Motion for Summary Judgment [55] as to Plaintiff Anderson is GRANTED in part and DENIED in part. The motion is DENIED as to Plaintiff Anderson's Title VII retaliation claim. The motion is DENIED as to Plaintiff Anderson's Section 1981 retaliation claim brought pursuant to Section 1983. The motion is GRANTED as to Plaintiff Anderson's retaliation claim based on his alleged demotion brought under the Equal Protection Clause of the Fourteenth Amendment pursuant to Section 1983.

So ORDERED on this, the  \_\_\_\_23rd\_\_ day of \_\_\_March_____, 2012.


                                        **/s/   Sharion Aycock_____**
                                        **UNITED STATES DISTRICT JUDGE**